**In re Burrill B. EBLE, Individually and d/b/a Craftsman Press, Debtor.**

**Bankruptcy No. 79–1292.**

United States Bankruptcy Court, W. D. New York.

Sept. 15, 1981.

Stanley Gordon, Rochester, N. Y., for debtor.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

On May 14, 1979, Burrill B. Eble filed his petition for relief under Chapter 7 of the Bankruptcy Act. On November 9, 1979, the IRS filed its proof of claim in the amount of $3,046.87. Sometime before June, 1980, the IRS seized the debtors 1979 tax return and applied the same in partial satisfaction of its claim. On June 6, 1980, the IRS reduced its claim against the estate to $1,054.34. On October 31, 1980, the Court approved the trustee's accounting which showed a balance available for distribution of $5,089.61.

If the debtor's assets had been liquidated and the proceeds distributed prior to the IRS's refund seizure, the IRS would have been paid in full, approximately $2,000 would have been left for distribution to other creditors, and the debtor could have kept his refund. Instead, the IRS seized property of the debtor that was not property of the estate and thereby reduced its claim against property of the estate. Consequently, at the time of distribution, an additional $2,000 was made available for the satisfaction of other claims.

In effect, the debtor's tax refund was paid indirectly to general creditors, a result that the general creditors could not have achieved directly. The debtor claims that he, not the general creditors, is entitled to the tax refund amount.

Recognizing that he has no remedy at law, the debtor argues the equitable theory of subrogation. The gist of his argument is that once the IRS filed its claim, the trustee became obligated to pay the entire amount of that claim from assets of the estate. The debtor argues that since he was forced to make partial payment on that claim, he should be subrogated to the rights of the IRS, status quo ante, and receive priority payment of an amount equal to the difference between the IRS's initial claim and the amount actually paid from assets of the estate.

The debtor cannot prevail with this argument.

An essential prerequisite to the right of subrogation is that the person seeking subrogation must have made a payment, or had his funds or other property applied, to discharge *another's* obligation. There must have been an existing liability such as a debt or demand, on which *the other person* was obligated at the time of the payment or application of property. *A person's payment of his own debt rather than of another's obligation does not entitle the person to subrogation.*

57 N.Y.Jur., Subrogation § 8 (emphasis added, footnotes omitted); see *Pathe Exchange v. Bray Pictures Corp.*, 231 A.D. 465, 247 N.Y.S. 476.

Neither the trustee nor the creditors he represented were indebted to the IRS. The debt was the debtor's own obligation. Therefore, the debtor is not entitled to subrogation and it is so ordered.